USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/20/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------X
                                                             :
    GO NEW YORK TOURS, INC.,                                 :
                                                             :
                                    Plaintiff,               :
                                                             :        19-CV-9803 (VEC)
                    -against-                                 :
                                                             :        OPINION & ORDER
                                                             :
    TOUR CENTRAL PARK INC.,                                  :
                                                             :
                                    Defendant.               :
-------------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

Two bicycle rental companies that operate out of Central Park dispute which is entitled to use the "Bike Rental Central Park" trademark. On October 23, 2019, Go New York Tours ("Plaintiff") sued Tour Central Park Inc. ("Defendant") for trademark infringement and related claims. *See* Compl., Dkt. 1. On October 30, 2020, the parties informed the Court that they had reached an amicable resolution of the matter. Letter, Dkt. 44. As a result of the parties' purported settlement, the Court dismissed the case with prejudice. *See* Order, Dkt. 45 at 1. Several days later, Defense counsel informed the Court that his client had misunderstood a key term of the settlement agreement and asked the Court to reopen the case for immediate trial. Letter, Dkt. 48. On January 11, 2021, Plaintiff moved to reopen the case so that the Court could either enforce the settlement agreement or allow Plaintiff to amend its complaint to add a breach of contract claim. *See* Notice of Mot, Dkt. 52 at 1. For the reasons discussed below, Plaintiff's motion is DENIED WITHOUT PREJUDICE.

## BACKGROUND

The parties dispute which is entitled to use the trademark "Bike Rental Central Park" and to use other phrases like "Bike Rent NYC." *See generally* Compl., Dkt. 1; Ans., Dkt. 15. The

parties tried to reach an early settlement through mediation.  *See* Order, Dkt. 17 (referring the parties to the Court-sponsored mediation program).  When mediation through the Court-sponsored program was unsuccessful, *see* Letter, Dkt. 25, the parties next turned to a private mediator, Letter, Dkt. 41.  On October 30, 2020, the parties jointly submitted a letter to the Court stating that they "were able to reach an amicable resolution of this action."  Letter, Dkt. 44 at 1.

As a result of the parties' purported settlement, on November 2, 2020, the Court dismissed the case with prejudice.  *See* Order, Dkt. 45 at 1.  The Order provided that the parties could apply to reopen the case within thirty days if they could show "good cause for holding the case open in light of the parties' settlement."  *Id.*  Additionally, the Court informed the parties that if they "wish for the Court to retain jurisdiction to enforce their settlement agreement, they must submit within the same 30-day period:  (1) their settlement agreement to the Court in accordance with Rule [7].A of the Court's Individual Practices and (2) a request that the Court issue an order expressly retaining jurisdiction to enforce the settlement agreement."  *See Id.* at 1–2 (citing *Hendrickson v. United States*, 791 F.3d 354 (2d Cir. 2015) (cleaned up)).  Rule 7.A of the undersigned's Individual Practices in Civil Cases notes that if parties would like the Court to retain jurisdiction to enforce their settlement agreement, they must file the agreement on the public docket (or make a request to file the agreement under seal) so that the Court may determine whether to retain jurisdiction for the limited purpose of enforcing the settlement agreement.  *See* Ind. Prac. R. 7.A.

Plaintiff's counsel reports that on November 4, 2020, two days after the Court dismissed the case, Defense counsel informed him that the Defendant "intended to back out of the settlement" because he would not accept certain terms, namely the provision allowing both parties to continue using the terms "Central Park Bike Rent" and "Central Park Rent Bike."  *See*

2

Letter, Dkt. 46 at 1–2.  Defense counsel claims that there had been a misunderstanding[1] and that no settlement was ever reached because (a) his client never would have agreed that both businesses could use those terms and (b) his client felt stressed and pressured during the mediation.[2]  *See* Letter, Dkt. 48 at 2–3.  To give the parties more time to see if the problem could be resolved, the Court extended the application window for reopening the case with good cause by another sixty days, until January 12, 2021.  *See* Order, Dkt. 49.

In an attempt to resolve the case without further court intervention, the parties returned to mediation, but they failed to reach an agreement.  *See* Ross Decl., Dkt. 53 ¶ 15; Nohavicka Decl, Dkt. 55 ¶ 13.  On January 11, 2021, Plaintiff moved to reopen the case and enforce the settlement agreement, or alternatively, for leave to amend its Complaint to add a breach of contract claim.[3]  *See* Notice of Mot. at 1–2.  Defendant joined Plaintiff's application to reopen the case but argued that the matter should proceed to immediate trial on the merits because the "case was not settled."  *See* Resp., Dkt. 56 at 1.

## DISCUSSION

At issue is whether the parties have established good cause to reopen the case.  Plaintiff argues that the need for the Court to enforce the settlement agreement constitutes good cause. *See* Mem. of Law, Dkt. 54 at 11–12.  Defendant joins the application to reopen the case; Defendant argues, however, that good cause to reopen exists because there was no settlement and

---

[1]     It appears that Defense counsel had initially understood that the parties had reached a settlement.  Defense counsel drafted and circulated the allegedly agreed upon term sheet at the end of the mediation session, *see* Letter, Dkt. 48 at 1, and Defense counsel filed the parties' joint letter informing the Court that a settlement had been reached, *see* Letter, Dkt. 44.

[2]     Defendant's principal, who participated in the mediation, speaks English but "his primary languages are Russian and Turkmen."  Letter, Dkt. 48 at 3.

[3]     Plaintiff also requested that were the Court to grant its request to amend its Complaint to add a breach of contract claim, that the Court also grant summary judgment in its favor on that claim.  Notice of Mot., Dkt. 52 at 1. Because the Court denies Plaintiff's motion to amend the Complaint, the request that the Court grant Plaintiff summary judgment is denied as moot.

Defendant wishes to proceed to trial on the merits. *See* Resp. at 1. The Court agrees that if the case were not settled, then there would be good cause to reopen it. Accordingly, for good cause to be established under either party's theory, the Court must determine whether a settlement agreement has been reached and, if so, whether the Court can enforce it. But the Court can only make that determination if it has subject-matter jurisdiction to do so. In short, whether there is good cause to reopen this case depends on whether a settlement was reached, and making that determination requires subject matter jurisdiction.[4]

## I.    Supplemental Jurisdiction

Plaintiff's proposed breach of contract claim would be one means to determine whether a settlement agreement existed, and if so, whether it was breached. Plaintiff seeks leave to amend its Complaint to add a breach of contract claim pursuant to Rule 15 of the Federal Rules of Civil Procedure. *See* Mem. of Law, at 14–15; Proposed Am. Compl., Dkt. 53-10 ¶¶ 89–104. The Court may deny leave to amend a complaint pursuant to Rule 15 if the amendment would be futile. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). If the Court lacks subject-matter jurisdiction over the proposed breach of contract claim, then amending the complaint would be a futile endeavor. The Court has federal question jurisdiction over the original trademark claims in this case, but a breach of contract claim is premised on New York state law. Because the parties are not diverse,

---

[4]    Plaintiff argues that after issuing the thirty-day order, the Court considered submissions from the parties and held a telephone conference, so it never divested itself of jurisdiction. Mem. of Law, Dkt. 54 at 12. Defendant similarly argues that the Court showed an intent to retain jurisdiction by including the thirty-day window for the parties to apply to reopen the case. Resp., Dkt. 56 at 7. But neither party contests that the case was dismissed with prejudice. *See* Order, Dkt. 45 ("[T]his case is DISMISSED with prejudice…").

The Court received the parties' submissions and held a telephone conference in an attempt to determine whether good cause existed to reopen the case and whether the Court had subject-matter jurisdiction. The mere fact that the Court held a conference and considered submissions does not provide an independent basis to reopen the case; nor can the Court create subject-matter jurisdiction when it does not exist by talking to the parties.

*see* Compl. ¶¶ 9–10, the only possible basis for the Court's subject-matter jurisdiction over the breach of contract claim would be supplemental jurisdiction.

The Court does not have supplemental jurisdiction over the breach of contract claim because the claim does not share a common nucleus of operative fact with the trademark claims. Absent diversity jurisdiction, the Court may exercise supplemental jurisdiction over state law claims only if they are so related to claims in the action over which the Court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]isputes are part of the same case or controversy within § 1367 when they derive from a common nucleus of operative fact." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (internal quotation omitted). Claims derive from a common nucleus of operative fact "where the facts underlying [them] substantially overlap[ ] . . . or where presentation of the federal claim necessarily br[ings] the facts underlying the state claim before the court." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (citations omitted).

Here, there is no common nucleus of operative fact between the trademark claims and the breach of contract claim because the two sets of claims are based on fundamentally different facts.[5] With respect to the proposed breach of contract claim, the Court would have to take evidence regarding who said what before and during the mediation. *See* Proposed Am. Compl. ¶¶ 90–104. The trademark claims, in contrast, arise from a completely different set of facts, namely the parties' operations and promotions of their bicycle rental services and whether the

---

[5]        *See also Demopoulos v. Anchor Tank Lines, LLC*, 117 F. Supp. 3d 499, 515 (S.D.N.Y. 2015) (finding that a claim for a breach of a settlement agreement is not sufficiently related to the claim creating the original case as to form part of the same case or controversy) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994) ("[T]he facts underlying respondent's dismissed claim for breach of agency agreement and those underlying its claim for breach of settlement agreement have nothing to do with each other.")).

similar marks create consumer confusion.  *See* Compl. ¶¶ 14–38.  The federal claim does not

bring the facts underlying the state claim before the Court; rather, the breach of contract claim

arises from an entirely different set of facts that are not intertwined with the facts giving rise to

the trademark claims.  In short, the Court does not have supplemental jurisdiction over the

proposed breach of contract claim.[6]

　　　　Without jurisdiction over the breach of contract claim, the proposed amendment to the

complaint is futile.  Accordingly, Plaintiff's request to amend its complaint to add a breach of

contract claim is denied.

## II.     Enforcement Jurisdiction[7]

　　　　In *Hendrickson*, the Second Circuit held that there are "only two ways in which a district

court may retain ancillary jurisdiction to enforce the terms of a settlement agreement: it may

'expressly retain jurisdiction over enforcement of the agreement' in an order of the court, or it

may 'incorporate . . . the terms of that agreement' in such an order."  *Hendrickson*, 791 F.3d at

359–60 (quoting *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 305 (2d Cir. 2014)).[8]

---

[6]　　　The only case Plaintiff cites to support its argument that the Court has supplemental jurisdiction over the proposed breach of contract claim is *Lemus v. Manhattan Car Wash, Inc.*, No. 06-CV-15486, 2010 WL 1372705 (S.D.N.Y. Mar. 26, 2010).  *See* Mem. of Law at 15.  But in *Lemus*, the court determined that it had jurisdiction to enforce a settlement agreement incorporated in a court order.  *Lemus*, 2010 WL 1372705, at *3–6.  Although the court granted plaintiff's motion to file a supplemental pleading, that decision was premised on the court's enforcement decision; the decision does not discuss — or even mention — supplemental jurisdiction.  *Id.* at *12.

[7]　　　Courts refer to enforcement jurisdiction in a number of ways.  Because enforcing settlement agreements implicates a court's ancillary jurisdiction, some courts refer to enforcement jurisdiction as ancillary jurisdiction.  *See, e.g.*, *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (citing *Kokkonen*, 511 U.S. at 379–80).  Enforcement jurisdiction derives from a court's inherent power and so some courts refer to the judicial enforcement of settlement agreements as falling under a courts' inherent power.  *See, e.g.*, *Cameron Int'l Trading Co. v. Hawk Importers, Inc.*, 501 F. App'x 36, 37 (2d Cir. 2012) (discussing *Kokkonen*, 511 U.S. at 377, 380).  For clarity, the Court will refer to this form of jurisdiction as simply "enforcement jurisdiction."

[8]　　　Both parties cite cases that recite this same standard for enforcement jurisdiction.  *See* Mem. of Law at 12–15 (citing *Cameron Int'l Trading Co. v. Hawk Imps., Inc.*, 501 F. App'x 36, 37–38 (2d Cir. 2012) (finding that Court had enforcement jurisdiction because it incorporated the agreement's terms into its dismissal); *Lemus*, 2010 WL 1372705, at *3–4 (same)); Resp. at 8 (citing *Kokkonen*, 511 U.S. at 378 (holding that a court can retain enforcement jurisdiction only by incorporating agreement's terms into order or expressly retaining jurisdiction); *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 327 (2d Cir. 2001) (reiterating that a court can retain enforcement jurisdiction by incorporating the agreement into an order or by expressly reserving jurisdiction)).

Neither of the two *Hendrickson* paths to enforcement jurisdiction is satisfied here.[9]  The Court never expressly retained jurisdiction to enforce the settlement agreement.  Instead, the Court provided the following instructions: "if the parties wish for the Court to retain jurisdiction to enforce their settlement agreement, they must submit . . . : (1) their settlement agreement to the Court in accordance with Rule [7].A of the Court's Individual Practices and (2) a request that the Court issue an order expressly retaining jurisdiction to enforce the settlement agreement." Order, Dkt. 45 at 1–2 (citing *Hendrickson*, 791 F.3d at 354).  The parties did not comply with those instructions.  Even though the parties later filed letters that recited the contents of the settlement terms sheet that was circulated at the conclusion of mediation, *see* Letter, Dkt. 46 at 2; Letter, Dkt. 48-1 at 2–3, the parties never jointly submitted the terms of the settlement, and the parties never jointly requested the Court to retain jurisdiction to enforce the settlement agreement.

Moreover, even if the parties had complied with the Court's order, that would not be enough on its own to confer enforcement jurisdiction.  To have retained such jurisdiction, the Court would have needed to enter an order granting the parties' request that it retain jurisdiction. *See Melchor v. Eisen & Son Inc.*, No. 15-CV-113, 2016 WL 3443649, at *8 (S.D.N.Y. June 10, 2016) (finding the court did not expressly retain jurisdiction even though parties had provided a copy of the agreement and the court had approved the settlement); *see also Miener ex rel. Miener v. Mo. Dep't of Mental Health*, 62 F.3d 1126, 1127 (8th Cir. 1995) (finding that court did not

---

[9]       The question whether a court has jurisdiction to enforce a settlement agreement is distinct from the question whether a court has jurisdiction to determine whether a settlement agreement was reached in the first place. Enforcement jurisdiction is only pertinent to the first issue; enforcement jurisdiction does not confer power on the Court to determine whether an agreement actually was reached.  *See Melchor v. Eisen & Son Inc.*, No. 15-CV-113, 2016 WL 3443649, at *7–8 (S.D.N.Y. June 10, 2016).  Accordingly, enforcement jurisdiction on its own is insufficient to confer jurisdiction over the parties' dispute about whether a settlement was reached.  But even assuming the parties had entered into a valid and binding settlement agreement, for the reasons discussed herein, the Court lacks jurisdiction to enforce it.

expressly retain jurisdiction even when the parties "filed a joint motion asking the district court to approve the settlement."); Ind. Prac. R. 7.A. (noting that "[t]he Court will determine whether to retain jurisdiction after the settlement agreement is filed."). In short, Plaintiff has not shown that the Court expressly retained jurisdiction to enforce the settlement agreement.

Plaintiff has also not established that the Court incorporated the terms of the settlement agreement into an order, which is the second way a court can retain enforcement jurisdiction. The dismissal order in this case did not incorporate the terms of the settlement agreement. The order noted in a whereas clause only that "on October 30, 2020 (Dkt. 44), the parties notified the Court that they have reached an agreement in principle resolving all issues." Order, Dkt. 45 at 1. But that clause does not delineate the terms of the purported settlement.[10] Instead, the Court's dismissal order "merely acknowledges the existence of the settlement that precipitated the dismissal, [which is] insufficient to confer ancillary jurisdiction on the district court to adjudicate what remains a state law contract claim." *See StreetEasy*, 752 F.3d at 305.

In *StreetEasy*, the Second Circuit held that a district court's dismissal order did not incorporate the settlement agreement. 752 F.3d at 305. In that case, the parties settled during a court conference. *Id.* at 302–03. At the conclusion of the conference, the judge noted that there was no need to draft a formal settlement agreement because the transcript constituted the agreement. *Id.* at 303. The court then entered a dismissal order, which stated: "[b]ased on the settlement agreement reached by all parties and transcribed by the court reporter," the "action is dismissed with prejudice . . . ." *Id.* The Second Circuit found that order had not incorporated the terms of the settlement agreement, even though the order expressly referenced the transcript that contained the terms of the agreement. *Id.* at 306. The Second Circuit's decision that the

---

[10] This Court was not aware of the purported terms of the settlement agreement when it entered its dismissal order.

*StreetEasy* order did not incorporate the terms of the agreement for the purposes of enforcement jurisdiction leaves no doubt that the order in this case, which did considerably less that the *StreetEasy* order, is legally insufficient to establish enforcement jurisdiction.  *See also Miener ex rel. Miener*, 62 F.3d at 1127–28 (holding that district court did not retain jurisdiction to enforce settlement agreement because the "dismissal order acknowledges, '[a]ll matters . . . 'hav[e] been settled and resolved,' but does not otherwise mention the settlement agreement or its terms").

In short, because the Court did not expressly retain jurisdiction to enforce the settlement agreement and because the Court's dismissal order did not incorporate the terms of the settlement agreement, the Court lacks enforcement jurisdiction in this matter.

### III.    Plaintiff's Remaining Cases Are Inapposite or Unpersuasive

Plaintiff cites several cases to support its argument that the Court has jurisdiction to enforce the settlement agreement.  Because the cases are either inapposite or unpersuasive, the Court declines to follow them.

Plaintiff cites to inapposite cases in which jurisdiction to enforce a settlement agreement was premised on diversity.  Mem. of Law at 11 (citing *Can't Stop Prods., Inc. v. Slxuvus, Ltd.*, No. 17-CV-6513, 2019 WL 5773739 (S.D.N.Y. Jan. 18, 2019), *report and recommendation adopted sub nom. Can't Stop Prods., Inc. v. Sixuvus, Ltd.*, No. 17-CV-6513, 2019 WL 1397196 (S.D.N.Y. Mar. 28, 2019)).  In *Can't Stop*, after the parties reached a settlement agreement during a conference with the magistrate judge, the district court entered a thirty-day order dismissing the case.  *Can't Stop Prods.*, 2019 WL 5773739, at *2.  Within the thirty-day period, the parties informed the court that an intervening party disputed a term in the settlement agreement.  *Id.* at *2–3.  The court found that it had jurisdiction to enforce the settlement agreement, citing a Second Circuit case which held that a "trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are clear and

9

unambiguous." *Can't Stop Prods.*, 2019 WL 5773739, at *4 (quoting *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005)).

But the reliance in *Can't Stop* on the holding in *Omega* was misplaced.  In *Omega*, the court had diversity jurisdiction.  *See Omega Eng'g, Inc.*, 432 F.3d at 443; *see also E.E.O.C. v. Beauty Enters., Inc.*, No. 01-CV-378, 2007 WL 3231692, at *2 (D. Conn. Oct. 31, 2007) ("The court noted that in *Omega* . . . the district court's jurisdiction was based on the diversity of the parties . . . .").  To determine whether the settlement agreement could be enforced, the Second Circuit in *Omega* found that Connecticut state law permits courts to enforce a settlement agreement when the terms are "clear and unambiguous."  *Omega Eng'g, Inc.*, 432 F.3d at 444 (citing two decisions by the Supreme Court of Connecticut).  *Can't Stop* erroneously relied on *Omega*'s application of Connecticut state law to conclude that the district court had inherent power to enforce a settlement agreement, even though the parties in *Can't Stop* were not diverse and Connecticut state law was irrelevant to the action.  Because the parties in this action are not diverse and Connecticut state law does not provide the rule of decision, the Court declines to follow *Can't Stop* and *Omega*.

Plaintiff also relies on *Rahman v. Kaplan Cornelia, Inc.*, No. 12-CV-9095, 2014 WL 541851 (S.D.N.Y. Feb. 11, 2014).  *See* Mem. of Law at 11 (citing *Rahman*, 2014 WL 541851, at *3).  In *Rahman,* the court  had federal question jurisdiction over the parties' federal labor law claims and supplemental jurisdiction over the parties' state law wage and hour claims.  *See* First Am. Compl., 12-CV-9095, Dkt. 33 ¶¶ 3, 5–6, 8 (S.D.N.Y. Feb. 11, 2014).  The *Rahman* court cited *Omega* to conclude that it could enforce a settlement that had been reported to the court by the parties, *see Rahman*, 2014 WL 541851, at *3, without acknowledging that the *Omega* court was applying Connecticut law and that it had diversity jurisdiction.  The *Rahman* court also relied on *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714 (2d Cir. 1974) (per curiam),

in deciding that it had jurisdiction to enforce the settlement agreement. *Rahman,* No. 12-CV-9095, 2014 WL 541851, at *3. The Court in *Tandy* had jurisdiction to enforce the settlement agreement because the agreement had been filed on the docket and so ordered by the Court. *See Tandy Corp.*, 490 F.2d at 717. In contrast, the settlement agreement in *Rahman* was not filed on the docket nor was it incorporated into a court order, indicating that its reliance on *Tandy* was misplaced. In short, the Court declines to follow *Rahman* because it is not persuasive authority.

The Court also declines to follow *Herrera v. Eastside Wok, Inc.*, No. 13-CV-9137, 2014 WL 6678281 (S.D.N.Y. Nov. 25, 2014), another case cited by Plaintiff. *See* Mem. of Law at 11(citing *Herrera*, 2014 WL 6678281, at *2). In *Herrera*, the court encouraged the parties to put the material terms of the settlement on the record, and it appears the Court expressly retained jurisdiction to enforce the agreement. *Herrera*, 2014 WL 6678281, at *1. The *Herrera* court cited *Tandy* to conclude that it had jurisdiction to enforce the settlement agreement. *Id.* at *2 (citing *Tandy Corp.*, 490 F.2d at 717). But the facts in *Herrera* and *Tandy* are easily distinguished from those at issue here. In this matter, the Court did not expressly retain jurisdiction, nor did it incorporate the terms of the settlement agreement into an order. Accordingly, the holdings in *Herrera* and *Tandy* do not support Plaintiff's argument that the Court has subject-matter jurisdiction to enforce these parties' purported settlement agreement.

Plaintiff cites an additional case, *Alvarez v. City of New York*, 146 F. Supp. 2d 327 (S.D.N.Y. 2001), that held that if a party requests that a case be reopened within the time-period delineated in the dismissal order, then the court retains subject-matter jurisdiction to enforce a settlement. *See* Mem. of Law at 13 (citing *Alvarez*, 146 F. Supp. 2d at 334 n.5). In *Alvarez*, the court recognized that "a motion to enforce[] [a] settlement after a case has been dismissed must be supported by an independent basis of jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377–78 (1994)). The court further found that enforcement

jurisdiction, as laid out in *Kokkonen*, was inapplicable because "[t]he Court's order . . . dismissed the cases but allowed any party to apply for their restoration to the Court's calendar if settlement was not consummated within thirty days." *Id.* The court provided no explanation for how it could avoid the requirements of enforcement jurisdiction or why an application by a party within the time period meant that the court had subject-matter jurisdiction to enforce a settlement.[11] Because the court provided no real explanation for the basis of its subject-matter jurisdiction, the Court does not find it to be persuasive authority.

In short, none of the cases cited by Plaintiff supports its position that the Court has subject-matter jurisdiction to enforce the purported settlement agreement in this matter.

## CONCLUSION

Because the Court does not have subject-matter jurisdiction to determine whether the parties reached a settlement agreement and, if so, to enforce it, the Court lacks good cause to reopen the case. Accordingly, Plaintiff's motion to reopen the case and enforce the settlement agreement is DENIED.

But the Court agrees with Defendant that if the matter was not settled because there was no meeting of the minds on the terms of the settlement then the Court would have good cause to reinstate the case and place the original trademark dispute back on the trial calendar. Accordingly, Plaintiff's motion to reopen the case is denied without prejudice. By no later than **Friday, October 22, 2021**, either party may re-apply to have the case reinstated on the Court's docket. Any such application must include a statement that the dispute surrounding the purported settlement agreement has been resolved by the parties on their own or that the parties are litigating the matter before an appropriate forum. If the parties are litigating the matter, the

---

[11] The parties in *Alvarez* were not diverse so diversity jurisdiction did not provide an independent basis for the Court's power. *Alvarez v. City of New York*, 146 F. Supp. 2d 327, 334 n.5 (S.D.N.Y. 2001).

Court will reopen the case and then stay it, pending resolution of the question whether there was a settlement agreement.

The Clerk of Court is respectfully directed to close the open motion at docket entry 52.


**SO ORDERED.**


**Date:  August 20, 2021**
          **New York, NY**

                                                                 **VALERIE CAPRONI**
                                                **United States District Judge**